UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD ROSS,

        Plaintiff,                   Civil Action No. 13-11858

       v.                                Hon. George Caram Steeh
                                        Magistrate Judge Laurie J. Michelson

WELLS FARGO BANK, N.A.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, and
PEOPLE'S CHOICE HOME LOAN, INC.

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS [3] AND ORDER DENYING
PLAINTIFF'S MOTION FOR STAY OF EVICTION [11]**

        This is *pro se* Plaintiff Gerald Ross's third attempt to halt foreclosure proceedings. Two previous cases concerning the same property and mortgage at issue in this case were consolidated and dismissed for failure to state a claim. Defendants Wells Fargo Bank, N.A., ("Wells Fargo") and Mortgage Electronic Registration Systems, Inc. ("MERS"),[1] now move to dismiss the complaint in this case. (Dkt. 3.) The motion was referred to this Court for report and recommendation. (Dkt. 8.) For the following reasons, this Court **RECOMMENDS** that Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) be **GRANTED**. Because the Court recommends dismissal, Plaintiff's Motion for Stay of Eviction (Dkt. 11) is **DENIED** as moot.

---

1       The third defendant, People's Home Choice Loan, Inc., apparently no longer exists and has not been served.

## I. FACTUAL BACKGROUND

### A. Plaintiff's Prior Cases

In July of 2012, Plaintiff filed two actions in Wayne County Circuit Court against the defendants sued in this case. Both cases concerned Plaintiff's mortgage on Lot 51, Blackstone East Trinity Subdivision, at 19191 Trinity, Detroit. *Ross v. Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems, and People's Choice Home Loan, Inc.*, No. 12-13387, Compl. Ex. B (E.D. Mich. Aug. 1, 2012); *Ross v. Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems, and People's Choice Home Loan, Inc.*, No. 12-13473, Compl. Ex. B (E.D. Mich. Aug. 8, 2012). Wells Fargo and MERS removed both actions to federal court, and the cases were consolidated before District Judge George Caram Steeh. *Ross v. Wells Fargo Bank, N.A., et al.,* No. 12-13387 (E.D. Mich. Oct. 4, 2012) (order consolidating cases).

On January 16, 2013, Judge Steeh dismissed the cases for failure to state a claim. *Ross v Wells Fargo Bank, N.A.*, No. 12-13387, 2013 WL 173771 (E.D. Mich. Jan. 16, 2013) (hereinafter "*Ross I*"). Noting that Plaintiff "fails to give any factual support for any of the violations he alleges" Judge Steeh concluded "it is impossible to understand what has given rise to the complaint." *Ross I*, 2013 WL 173771, at *2. Faced with a complaint that was "largely unintelligible," Judge Steeh found that it failed to meet the requisite pleading standards of Rules 8 and 9(b). *Ross I*, 2013 WL 173771, at *1–2.[2]

---

[2] Plaintiff also filed a third case concerning a mortgage on a different property, using virtually the same form complaint as the previous two cases. *Ross v. Bank of America, N.A., and Mortgage Electronic Registration Systems*, No. 12-14380 (E.D. Mich. removed Oct. 2, 2012). This Court recommended dismissing that case for the same reasons as the previous two, and District Judge Stephen J. Murphy III adopted the recommendation, dismissing the case under Rule 12(b)(6). *Ross v. Bank of America, N.A., et al.*, No. 12-14380, 2013 WL 3305704 (E.D.

2

**B. The Instant Case**

The present case was filed in Wayne County Circuit Court on March 28, 2013, and removed to federal court on diversity jurisdiction grounds on April 25, 2013. (Dkt. 1.)

The Complaint alleges that "this action involves real property situated in the City of Detroit . . . more specifically described as Lot 51, Blackstone Estate, Trinity Subdivision." (Dkt. 1-1, Compl. ¶ 7.) It alleges that "the Note and Mortgage held by Defendant Lender" "contained specific limitations on the manner in which increases in monthly payments and/or surcharges could be imposed," which "Defendant Lender" breached by imposing unauthorized "excess monthly payment rates and surcharges." (Compl. ¶¶ 10, 23). Plaintiff alleges that Defendants failed to provide validation when requested (Compl. ¶ 8), and that "even if the subject debt had been duly validated, Defendant Lender acted improperly in the manner in which the subject Note thereof was enforced and the mortgage foreclosed" (Compl. ¶ 9).

The Complaint alleges that "Defendant Lender" induced Plaintiff to enter and comply with "Forbearance Agreements" that contained "specific limitations on the manner in which increases in monthly payments and/or surcharges could be imposed," and then breached them by refusing to honor them and imposing further unauthorized and "artificially and unjustifiably inflated" "excess monthly payments and surcharges." (Compl. ¶¶ 14, 25.) Plaintiff alleges that "Defendant Lender" also induced him to enter and comply with Loan Modification agreements with "specific limitations on the manner in which increases in monthly payments and/or surcharges could be imposed," and then breached them by refusing to honor them and imposing

---

Mich. June 30, 2013).

further unauthorized and "artificially and unjustifiably inflated" "excess monthly payments and surcharges." (Compl. ¶¶ 18, 27.) Plaintiff also alleges that he detrimentally relied on the Forbearance Agreements and Loan Modification agreements. (Compl. ¶¶ 19, 28.)

Plaintiff further alleges that "Defendant Lender" "published and disseminated nationwide" "false and/or misleading derogatory statements concerning Plaintiff's creditworthiness and/or compliance with agreements" "without justification." (Compl. ¶ 31.) Finally, Plaintiff alleges that "Defendant Lender" "permanently impaired the ability of Plaintiff to conduct future business with third party lenders with whom Plaintiff has had existing relationships, as well as with other, separate third party lenders with whom Plaintiff prospectively had or could have had relationships." (Compl. ¶ 33.)

The Complaint identifies five separate counts: (1) Breach of Original Contract, (2) Breach of Forbearance Agreements, (3) Breach of Loan Modification Agreement, (4) Promissory Estoppel, and (5) Invasion of Privacy—False Light/Slander of Credit. (Compl. ¶¶ 22–33.)

Plaintiff did not attach any note or mortgage document to his Complaint. Defendants attached to their Motion to Dismiss a note apparently signed by Plaintiff on August 27, 2008, in which he promised to repay $69,129 plus interest to lender Access National Mortgage Corporation. (Dkt. 3-2, Mot. Dismiss, Ex. 1.) According to a document attached to Defendant's Reply, the note was secured by a mortgage for Lot 51, Blackstone Estate, Trinity Subdivision, with the address 19191 Trinity Street, Detroit, Michigan. (Dkt. 10-2, Reply in Support of Mot. Dismiss, Ex. 12, at PgID 173.) The lender identified in the mortgage document is Access

National Mortgage Corporation, represented by MERS as nominee. (*Id.* at PgID 165.) The mortgage was recorded on September 10, 2008. (*Id.*) According to a document attached to Defendants' Motion to Dismiss, MERS assigned the mortgage to Wells Fargo on November 8, 2011, and the assignment was recorded on November 10, 2011. (Dkt. 3-4, Mot. Dismiss, Ex. 3.)

Defendant makes several allegations in opposition to the Motion to Dismiss that are not made in the Complaint. He argues that "Plaintiff and Defendant Peoples Choice Home Loan, Inc. made a monetary exchange on August 25th 2006 of which all parties were made whole and the bargain fulfilled." (Dkt. 6, Opp. to Mot. Dismiss, ¶ 1 (capitalization altered).) He attaches documents showing that a mortgage he granted to MERS as nominee for People's Choice Home Loan on August 14, 2006, to secure a loan of $60,000, was discharged and the loan paid in full on September 3, 2008. (Opp. to Mot. Dismiss, at PgID 151.) He argues that he "never took a loan out with Wells Fargo Bank N.A. or Access National Mortgage Corporation." (Opp. Mot. Dismiss, ¶ 2 (capitalization altered).) Plaintiff maintains that the assignment document attached to Defendants' motion is "fraudulent" and "bogus because Plaintiff never took out a mortgage with Access National Mortgage Corporation." (*Id.*, ¶ 9 (capitalization altered).)

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the Plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the Plaintiff," but the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555,

559 (6th Cir. 2008)). To survive a motion to dismiss under Rule 12(b)(6), a Plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a "probability requirement," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In ruling on a motion to dismiss, the Court may consider the complaint as well as documents referenced in the pleadings and central to the Plaintiff's claims, and matters of which a court may properly take notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Amini* v. *Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001). The Court's consideration of these documents does not require conversion of the motion to one for summary judgment. *Greenberg* v. *Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir. 1999).

### III. ANALYSIS

#### A. Res Judicata and Collateral Estoppel

Defendants first argue that Plaintiff's claims are barred by res judicata and collateral estoppel. (Mot. Dismiss at 4–6.) Defendants cite Michigan state case law on the issue, but a federal court applies federal law in determining the preclusive effect of a prior federal judgment. *See J.Z.G. Resources, Inc., v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir.1996) (holding that

federal law governs the preclusive effect of a prior federal diversity judgment).

Res judicata or claim preclusion bars all claims by the parties based on the same cause of action, as to every matter actually litigated and every theory that could have been presented, when four elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995). Collateral estoppel or issue preclusion bars relitigation of an issue when: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace and Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

Plaintiff's prior cases were dismissed because he had not met the pleading standards of Federal Rules of Civil Procedure 8 and 9. *Ross I*, 2013 WL 173771, at *2. Judge Steeh did not specify whether the dismissal was with or without prejudice, but he entered judgment for the defendants on the same day. *Ross I*, No. 12-13387, Dkt. 16.[3] Granting a motion to dismiss for

---

3      On the same day that the complaint was dismissed and judgment entered, Plaintiff filed an amended complaint. *Ross I*, No. 12-13387, Dkt. 17. Judge Steeh struck the pleading because Plaintiff did not seek leave of court to file it, but also noted that "the amended pleading would not have changed [his] analysis of the motion to dismiss." *Ross I*, No. 12-13387, Dkt. 18. Plaintiff did not subsequently move to amend the complaint.

insufficiency of the complaint serves as adjudication upon the merits, unless the district court specifies otherwise. *Guzowski v. Hartman*, 849 F.2d 252, 255 (6th Cir.1988). The first element of res judicata and the third element of collateral estoppel are met.

It is clear that the parties in the present and prior proceedings are identical, fulfilling the second element of res judicata and the fourth element of collateral estoppel.

Turning to the third element of res judicata, "an issue in the subsequent action which was litigated or which should have been litigated in the prior action," it is not clear from the record before the Court whether Plaintiff could have litigated his false light and tortious interference claims in the prior actions. Those claims appear to be based on the reporting of Plaintiff's default and foreclosure to credit reporting agencies, and there is nothing in the record to indicate when that occurred. Although Defendants argue that "Plaintiff's invasion of privacy—false light/slander of credit claim is nothing more than a regurgitation of his Fair Credit Reporting act claim from *Ross I*" (Mot. Dismiss at 5), that does not appear to be the case. The *Ross I* complaints mentioned the FCRA in only one paragraph, which stated: "Unlawful practice of 're-aging', A collection company must report the ORIGINAL date (actual month and year) the account FIRST became delinquent. This is when the clock begins ticking. This is a violation of Section 623(a)(5) of the FCRA and NCO was required to pay a $1,500,000.00 fine." (*Ross I* Compl. ¶ 20.) To the extent the *Ross I* complaints alleged FCRA claims—which is not at all clear—those claims were about "re-aging," not "false and/or misleading derogatory statements concerning Plaintiff's creditworthiness and/or compliance with agreements," as in this case. (Compl. ¶ 31.) There was no "regurgitation" of an earlier claim, therefore, and res judicata does

not apply to the false light and tortious interference claims, at least on this record.

Plaintiff's claims for breach of contract and promissory estoppel, on the other hand, should have been litigated in the prior actions. It is difficult to tell exactly what the claims in the prior case were because the complaints were so unintelligible, but it does appear that Plaintiff challenged the validity of the foreclosure of his mortgage and the manner in which it was carried out. That also appears to be the issue at the heart of his breach of contract and promissory estoppel claims in this case. Although there was no mention of Forbearance or Loan Modification Agreements in the prior complaints, any such agreements necessarily must have existed and been breached prior to the foreclosure of Plaintiff's mortgage. Plaintiff's claims for breach of those agreements therefore were ripe at the time the prior cases were filed, and should have been litigated then as part of his challenge to the foreclosure. On the breach of contract and promissory estoppel claims, then, the third element of res judicata is met.

Identity of causes of action, the fourth element of res judicata, means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Sanders Confectionery Products, Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992). Because the breach of contract and promissory estoppel claims essentially challenge the foreclosure of Plaintiff's mortgage, the facts creating the rights of action and the evidence necessary to sustain them are identical to those underlying the prior actions. The fourth element of res judicata is met. Res judicata bars Plaintiff's breach of contract and promissory estoppel claims arising from the foreclosure of his mortgage.

Collateral estoppel regarding specific issues, such as whether Plaintiff complied with

agreements, could theoretically apply to Plaintiff's false light and tortious interference claims, but the more straightforward route is to dismiss those claims for failure to state a claim. The Court recommends doing so below. Because there is some ambiguity as to whether Judge Steeh intended to dismiss with prejudice, and because Plaintiff is proceeding pro se and his filings must therefore be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court will also consider below whether there are independent grounds to dismiss the breach of contract and promissory estoppel claims.

**B. Breach of Contract and Promissory Estoppel Claims (Counts One to Four)**

Plaintiff alleges breach of contract as to the "original Note and Mortgage" as well as subsequent Forbearance Agreements and Loan Modification Agreements. But, as Defendants point out, Plaintiff has not alleged the terms of the contracts that were breached, how they were breached, or how that breach caused him injury. (Mot. Dismiss at 7.) The Court agrees.

Plaintiff's allegations that the Note, Mortgage, Forbearance Agreements, and Loan Modification Agreements contained "specific limitations on the manner in which increases in monthly payments and/or surcharges could be imposed," and that "Defendant Lender" "abrogated said parameters by imposition of unauthorized charges and/or surcharges" are not sufficiently specific. (*See* Compl. ¶¶ 10, 14, 18, 19, 23, 25, 27, 28.) Plaintiff does not even specify whether it was an increase in monthly charges or the addition of surcharges, or both, that allegedly breached the agreements. For Plaintiff to adequately state a claim for breach of contract, the Court must be able to identify the "specific limitations" that Plaintiff alleges were breached. *See Lamb v. Univ. Musical Soc.*, Nos. 253312 & 253313, 2005 WL 857384, at *1

(Mich. Ct. App. Apr. 14, 2005) ("The elements of a breach of contract cause of action are that a contract existed between the parties and that a breach of one or more of the contractual terms occurred."); *Livonia Diagnostic Ctr., P.C. v. Neurometrix, Inc.*, No. 11-15208, 2012 WL 2324920 (E.D. Mich. June 19, 2012) (Cox, J.) (holding plaintiff failed to state a plausible claim for breach of contract under Michigan law where he did not allege the terms of the alleged contract that the parties agreed to or and how the defendant breached those agreed upon terms); *Maraulo v. CitiMortgage, Inc.*, No. 12-10250, 2013 WL 530944, at \*11 (E.D. Mich. Feb. 11, 2013) (Goldsmith, J.) (holding that the plaintiffs failed to state a claim for breach of contract where they did not explain in their complaint which contract or agreement they were referring to, and did not present facts regarding the other elements of a breach of contract claim). Plaintiff has not identified any specific terms of the contracts that were allegedly breached.

Plaintiff did not even attach the mortgage document or any Forbearance Agreements or Loan Modification Agreements to the Complaint. In fact, it is not clear from the Complaint that the Forbearance Agreements and Loan Modification Agreements existed in writing. Defendants argue there were no such agreements. (Mot. Dismiss at 2.) And Defendant himself argues in his response to the Motion to Dismiss that he "never took a loan out with Wells Fargo Bank N.A. or Access National Mortgage Corporation" (Opp. Mot. Dismiss, ¶ 2 (capitalization altered)), which makes this Court wonder how he could assert a claim against Wells Fargo for breach of "an agreement involving the original Note and Mortgage" (Compl. ¶ 23). Moreover, Plaintiff's failure to attach the alleged Loan Modification Agreements makes it impossible for this Court to determine whether Plaintiff has pled a plausible claim regarding them, even giving the complaint

11

the liberal construction due to a pro se plaintiff.

To the extent Plaintiff alleges that the contracts that were breached were oral promises, Defendants argue that the Statute of Frauds bars such claims. (Mot. Dismiss at 7–9.) Likewise, Defendants argue that the Statute of Frauds bars Plaintiff's promissory estoppel claim (Count Four). (*Id.*) The Court agrees. Under Michigan law, an action may "not be brought against a financial institution to enforce . . . [a] promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of" or "to waive a provision of" "a loan, extension of credit, or other financial accommodation," "unless the promise or commitment is in writing and signed with an authorized signature by the financial institution." M.C.L. § 566.132(2); *see Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000) (noting that Michigan law "plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision," and holding it barred a promissory estoppel claim).

Because Plaintiff has not alleged that a specific written promise was made and breached, and it is therefore unclear what conduct by Defendants is alleged to have harmed Plaintiff, the breach of contract and promissory estoppel claims (Counts One, Two, Three, and Four of the Complaint) should be dismissed. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### C. Invasion of Privacy—False Light/Slander of Credit Claim (Count Five)

Michigan courts recognize four theories for the tort of invasion of privacy: "(1) the

intrusion upon another's seclusion or solitude, or into another's private affairs; (2) a public disclosure of private facts about the individual; (3) publicity that places someone in a false light in the public eye; and (4) the appropriation of another's likeness for the defendant's advantage." *Lewis v. LeGrow*, 670 N.W.2d 675, 687 (Mich. Ct. App. 2003). "In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 720–21 (Mich. Ct. App. 1993). If a plaintiff does not allege that the information broadcast by the defendant "attributed false characteristics" to the plaintiff or "placed [the plaintiff] in a false position," he has not stated a claim upon which relief can be granted. *Id.* at 721.

Here, Plaintiff alleges that "Defendant Lender" "made false and/or misleading derogatory statements concerning Plaintiff's creditworthiness and/or compliance with agreements" and "published and disseminated [them] nationwide . . . without justification." (Compl. ¶ 31.) Slightly more specifically, Plaintiff alleges that "Defendant Lender" "further compounded its wrongs by publishing and disseminating nationwide, derogatory matter concerning Plaintiff's credit which falsely characterized Plaintiffs as violators of credit arrangements which in fact Defendant Lender alone had violated." (Compl. ¶ 20.) These allegations are too general and conclusory to state a claim for false-light invasion of privacy. *See Vollmar v. Laura*, No. 262658, 2006 WL 1008995, at *3 (Ct. App. Mich. Apr. 18, 2006) (unpublished) (dismissing a claim for false-light invasion of privacy where the complaint failed to specify what statements the

13

defendants made that were false or actionable). On these threadbare allegations, it is not possible for the Court to assess whether defendant is plausibly liable for making statements "to the public in general, or to a large number of people" that "attributed false characteristics" to the plaintiff or "placed [him] in a false position." *See Duran*, 504 N.W.2d at 721; *Iqbal*, 556 U.S. at 678.

Even if, stretching to the utmost—if not beyond—the Court's obligation to liberally construe the complaint in the light most favorable to the plaintiff, the Court assumes that Plaintiff adequately alleged that the Defendants placed him in a false light by informing credit reporting companies that he had defaulted on his mortgage, dismissal would be appropriate. Plaintiff alleges that he was "placed in a position of apparent loan delinquency" (Compl. ¶¶ 11, 15), and that he was "hopelessly unable to afford the artificially and unjustifiably inflated monthly charge and/or imposed surcharges." (Compl. ¶¶ 14, 18.) It thus appears that Plaintiff admits he defaulted on his mortgage. He alleges that the characterization of his credit was "false," but it appears the basis for that allegation is not that he did not default, but that he defaulted only because "Defendant Lender" imposed "excess" charges. Since Plaintiff admits he defaulted—even if he argues that it was Defendants' fault that he defaulted—he cannot allege that Defendants portrayed him in a false light by reporting the default. *See Reschke v. CitiMortgage, Inc.*, No. 11-12639, 2013 WL 625755, at *7 (E.D. Mich. Feb. 20, 2013) (Cohn, J.) (holding that the plaintiffs "cannot maintain a claim of invasion of privacy based on the theory that they were placed in a 'false light' in the public eye" where they "admit that they stopped making payments on the mortgage").

In addition, the Fair Credit Reporting Act ("FCRA") preempts a false light claim based

on furnishing allegedly false or inaccurate information to a consumer reporting agency absent malice or willful intent to injure. *See* 15 U.S.C.A. § 1681h ("Except as provided [by the FCRA] no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."); *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 843 (E.D. Mich. 2010) (Lawson, J.) (finding a defamation claim was preempted by the FCRA where plaintiff had not alleged facts to support "malice or willful intent to injure the consumer"). Since Plaintiff has not alleged malice or willful intent to injure, his claim is preempted by the FCRA.

Nor could Plaintiff's false light claim be construed and maintained as an FCRA claim, because Plaintiff has not alleged that he contacted the credit reporting agencies to dispute the allegedly false information, a prerequisite for such a claim. *See* 15 U.S.C. § 1681s-2(b); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615–16 (6th Cir. 2012) ("consumers may step in to enforce their rights only after a furnisher has received proper notice of a dispute from a [credit reporting agency]"); *Yaldu*, 700 F. Supp. at 843 (holding FCRA claim "must fail" where "there is no allegation that [] the plaintiff's credit has been unjustifiably marred, or that the plaintiff communicated his belief of the mistake to the credit reporting agencies").

### D. Tortious Interference Claim (Count Six)

Under Michigan law, "[t]he elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not

15

necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (2005).

Plaintiff alleged that "Defendant Lender" "permanently impaired the ability of Plaintiff to conduct future business with third party lenders with whom Plaintiff has had existing relationships, as well as with other, separate third party lenders with whom Plaintiff prospectively had or could have had relationships" by making "false and/or misleading derogatory statements concerning Plaintiff's creditworthiness and/or compliance with agreements which Defendant alone had breached, and thereafter having published and disseminated nationwide such derogatory references to Plaintiff." (Compl. ¶ 33.)

This claim is founded on the same allegations as the false light claim discussed above. As discussed, it appears that Plaintiff admits he defaulted on his mortgage. (Compl. ¶¶ 11, 14, 15, 18.) "To make out a claim for tortious interference with business relations, a Michigan plaintiff 'must allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship.'" *Chrysler Int'l Corp. v. Cherokee Exp. Co.*, 134 F.3d 738, 745 (6th Cir. 1998) (quoting *Feldman v. Green*, 360 N.W.2d 881, 886 (1985)). If Defendants accurately reported to credit reporting agencies that Plaintiff defaulted on his mortgage, as appears from the Complaint, such an act is not per se wrongful and those allegations cannot form the basis of a

tortious interference claim. Because plaintiff has not plausibly alleged a per se wrongful act or that Defendants acted with malice, this claim should be dismissed.

### E. Plaintiff's Motion for Stay of Eviction

Plaintiff filed a "Motion for Stay of Eviction" in this Court on August 13, 2013. (Dkt. 11.) The motion was referred to this Court for hearing and determination. (Dkt. 12.)

According to Plaintiff, Defendants filed a complaint in Michigan's 36th District Court "to gain possession of Plaintiff's real property" after Plaintiff filed this case. (Mot. for Stay of Eviction, ¶¶ 2–3.) Plaintiff asks the Court to "stay the eviction in this matter for a period of time to be set by the Court" because "[t]o allow Defendant to gain possession of Plaintiff's real property while Defendant is litigating in Federal Court with Claims against Defendant would not be equitable because Plaintiff has a right to challenge the validity of his Foreclosure and it would be premature to grant Defendant possession of Plaintiff's real property while Plaintiff is challenging Defendant on the illegal foreclosure of his real property due to structural defects in the foreclose by advertisement." (Mot. for Stay of Eviction, ¶ 12.)

Because the Court recommends dismissal of the Complaint, Plaintiff's Motion for Stay of Eviction is moot. Additionally, Plaintiff's request for this Court to stay the state court eviction proceedings is prohibited pursuant to the Anti-Injunction Act. *See* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."); *see also E3A v. Bank of Am., N.A.*, No. 13-10277, 2013 U.S. Dist. LEXIS 38251 (E.D. Mich. Mar. 1, 2013) (finding plaintiff's request to stay writ of

17

eviction in the 36th District Court prohibited pursuant to the Anti-Injunction Act) (citing *Cragin v. Comerica Mortgage Co.*, No. 94-2246, 1995 U.S. App. LEXIS 37089, at *1 (6th Cir. Oct. 24, 1995) (finding that the Anti-Injunction Act "generally precludes federal injunctions that would stay pending foreclosure proceedings in the state courts.")).

The motion is denied.

## IV. CONCLUSION

For the reasons stated, this Court **RECOMMENDS** that Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) be **GRANTED**. Plaintiff's Motion for Stay of Eviction is **DENIED**.

## V. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596–97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not

constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

        s/Laurie J. Michelson
        LAURIE J. MICHELSON
        UNITED STATES MAGISTRATE JUDGE

Dated: August 28, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 28, 2013.

        s/Jane Johnson

        Deputy Clerk